IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00117-01 HG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF LAW |
| | ) | |
| vs. | ) | |
| | ) | |
| KENNETH CHIO HENG IONG, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

MEMORANDUM OF LAW

I.   STATEMENT OF FACTS

On November 6, 2003, the Defendant attempted to enter Japan with a false Costa Rican passport in the name of Win Ping King Fong.  The Defendant had departed on his trip with the false passport and was also carrying in his luggage his U.S. passport. The Defendant was denied admission into Japan and put on a plane to Honolulu.  After clearing immigration, the Defendant was sent to Customs where he was met by three ICE agents.  Upon meeting the Defendant at about 8:30 a.m., ICE agent Jason Pa explained to the Defendant that he was not under arrest and that the agents had a few questions for him about his acquisition and use of a false Costa Rican passport.  The agent explained that he did not want to embarrass the Defendant by interviewing him in front of the other arrivals.  Mr. Pa asked the Defendant for permission to interview him in a private room where they could talk freely. The Defendant immediately agreed to the interview and was

accompanied to a private room by the three agents.

Upon arriving at the interview room, Mr. Paul Akeo, another agent, explained to the Defendant that he was free to leave at any time and that he did not have to answer any questions. The Defendant asked Mr. Akeo if he could make a phone call on his cellular, which he did. Subsequently, the Defendant was again advised that he was not under arrest and he was free to leave the interview at any time. The Defendant stated he understood, and that he wanted to cooperate. Shortly after, the inspectors patted down Mr. Iong for contraband. The search results were negative. At that time the agents ended the interview and Mr. Iong departed.

During the interview, the Defendant indicated that he had purchased the fraudulent Costa Rican passport for $9,000 and provided his photograph to the vendor. The Defendant also stated that he had his own immigration attorney, Mr. Thomas Ho, and a business attorney, Ronald Au. Subsequently, the Defendant's lawyer arranged an interview with ICE agents at which the Defendant, in the presence of his own attorney, repeated his earlier statements and elaborated on the communications over the internet with a "James Dang" and his arrangements to obtain the fraudulent passport.

II. STATEMENT OF LAW

When a citizen of the United States arrives at a port

of entry, the Customs Service has an absolute right to cause an examination to be made of any baggage the person arriving in the United States has brought with them in an effort to ascertain what articles are contained therein.  19 U.S.C. § 1496.  In addition, the law provides that the Secretary of the Treasury, now Homeland Defense, may prescribe regulations for the search of persons and baggage of all persons coming into the United States from foreign countries and detention for the purpose of determining what the individual is bringing as well as a search are authorized.  19 U.S.C. § 1582.

Warnings regarding any right to counsel and to remain silent need not be given to one who is entering the United States unless and until the questioning agents have probable cause to believe the person has committed offenses or if the person has been arrested.  Chavez-Martinez v. United States, 407 F.2d 535 (9th Cir.), cert. denied, 396 U.S. 858 (1969).  Holding an individual for the purpose of completing a search to determine whether or not the subject has brought contraband into the United States does not give rise to a custody situation and does not require an advice of rights.  Chavez-Martinez, supra.

The premise of Miranda is that custodial interrogation is inherently coercive, 384 U.S. at 467.  See United States v. Bottone, 365 F.2d 389, 395 (2nd Cir.), cert. denied, 385 U.S. 974 (1966).  Whether the rights thereunder attached depends upon

whether the suspect is in custody.  *Stansbury v. California*, 511 U.S. 318 (1994).  The test is, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.  *Thompson v. Keohane*, 516 U.S. 99 (1995).  Asking a defendant to come to a particular location to engage in a conversation, make a statement, or submit to photographs does not necessarily lead to a custodial situation.  *Starkey v. Wyrick*, 555 F.2d 1352 (8th Cir.), *cert denied*, 434 U.S. 848 (1977).  Routine border stops and customs inspections do not amount to custodial interrogations, *United States v. Martinez*, 588 F.2d 495 (5th Cir. 1979).

"...[A] brief detention at the border by immigration and customs officials of persons presenting themselves for admission to the United States is not custody, even though such persons are not free to leave."  *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001).

// //
// //
// //
// //
// //
// /
// //
// //

III. CONCLUSION

        For the foregoing reasons, the Defendant's motion to suppress and exclude other evidence should be denied.

        DATED:  August 15, 2006, at Honolulu, Hawaii.

        Respectfully submitted,

        EDWARD H. KUBO, JR.
        United States Attorney
        District of Hawaii

        By /s/ Leslie E. Osborne, Jr.
           LESLIE E. OSBORNE, JR.
           Assistant U.S. Attorney