ORIGINAL

LAW OFFICE OF LEIGHTON K. LEE
LEIGHTON K. LEE-2975
1000 Bishop Street, Suite 312
Honolulu, Hawaii 96813
Tel. No.: (808) 599-4444
Facsimile No.: (808) 531-3244
E-mail: leighton@hawaiilaw.org
       And
JONES DAY
BRIAN D. HERSHMAN, ESQ. (Pro Hac Vice)
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
bhershman@jonesday.com

Attorneys for Defendant
KENNETH CHIO HENG IONG

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 2 6 2007
at 3 o'clock and __ min. __ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiffs,<br>vs.<br><br>KENNETH CHIO HENG IONG,<br><br>　　　　　　Defendant. | CR No. 05-00117-01-HG<br><br>DEFENDANT'S SENTENCING STATEMENT AND OBJECTIONS TO PRESENTENCE REPORT<br><br>Date:<br>Time:<br>Judge: Honorable Helen Gillmor<br><br>Sentencing Date: June 7, 2007 |

## **PRELIMINARY SENTENCING STATEMENT**

On February 23, 2007, defendant Kenneth Chio Heng Iong ("Mr. Iong") pled guilty, pursuant to a written plea agreement, to Counts 3 and 11 of the Indictment, charging Mr. Iong with income tax evasion and passport fraud, respectively. In essence, the charges involve Mr. Iong's failure to report as income on his tax returns certain personal expenditures paid for by his solely owned corporation (such as rental payments and mortgage/construction payments on certain real property). In addition, Mr. Iong purchased a false passport to travel overseas.

This conduct was an aberration for Mr. Iong, who has worked hard his whole life to earn the respect and affection of his family, his friends, and his business colleagues. Indeed, as evidenced by the numerous letters written by family, friends and colleagues on his behalf, Mr. Iong was and is an upstanding member of the community, dedicated to his family, his church and his charitable work. In his sentencing position paper, Mr. Iong will show this Court that a probationary sentence with home confinement and community service is sufficient to accomplish the objectives of 18 U.S.C. § 3553(a) in light of Mr. Iong's community and charitable involvement, his otherwise upstanding status as a member of the community, his need to provide emotional and financial support for his girlfriend and newborn child, and the fact that Mr. Iong has no prior criminal

record or even contacts with law enforcement prior to these offenses. Here, Mr. Iong objects to various inaccuracies in the Presentence Report ("PSR") and the guidelines calculation as determined by the Probation Department.

## **OBJECTIONS TO PSR**

A.   <u>Guidelines Calculations</u>

The Probation Department in the PSR calculates a total offense level of 16. The Probation Department reaches this conclusion by finding a base offense level of 16 with respect to Count Three as a result of an alleged tax loss of more than $200,000. (PSR ¶ 56). The Probation Department then adds two levels based on alleged sophisticated concealment of the tax fraud, resulting in an adjusted offense level of 18 for Count Three. (PSR ¶ 61). With respect to Count 11, the Probation Department finds a base and adjusted offense level of 11 by applying U.S.S.G. § 2L2.1. (PSR ¶¶ 62, 67). After the multi-count adjustment and a downward adjustment for acceptance of responsibility, the Probation Department finds a total offense level of 16. As discussed below, there are several inaccuracies in the Probation Department's guidelines analysis.

1. The Probation Department Applied the Wrong Base Offense Level for Passport Fraud

The Probation Department applies U.S.S.G. § 2L2.1 to Count 11 charging passport fraud and thereby calculates a base and adjusted offense level of 11.

However, because U.S.S.G. § 2L2.1 applies to *trafficking* in false passports or other documents relating to citizenship and legal status, the Probation Department's use of this guideline is erroneous. Instead, the Probation Department should have used U.S.S.G. § 2L2.2 which applies to fraudulently acquiring or *using* passports, resulting in a base offense level of 8. Defense counsel has notified the Probation Department of this error and the Probation Department has agreed to revise this in an amended PSR.

2.  The Probation Department Erred in Calculating the Applicable Tax Loss

As noted by the Probation Department, the defendant and the government have been unable to agree upon the amount of the tax loss. (PSR ¶ 6). Nevertheless, the Probation Department has relied on the government's analysis in determining the applicable tax loss, finding a total tax loss of more than $200,000 but less than $325,000, resulting in a base offense level of 16. (PSR ¶ 56). As will be discussed in greater detail in Mr. Iong's sentencing position paper (assuming the parties are not able to reach a stipulation as to tax loss), because the appropriate tax loss to the government is actually less than $40,000, the Probation Department should have found a base offense level of 12 or below.

Here, the government determined the amount of alleged unreported income by Mr. Iong based on its analysis of ICH Group, Inc.'s general ledger. The general

ledger indicated that certain transactions were initially booked as leasehold improvements, capital contributions or rental expenses, when in fact that money was used to pay construction costs and mortgages for various real property purchased in Mr. Iong's name. (PSR ¶¶ 15-17). However, it appears that the government was not provided or did not analyze the trial balance sheets which were ultimately used by ICH Group, Inc. in preparing its corporate tax returns. The trial balance sheets and ICH Group's tax preparer confirm that many of the transactions on the general ledger were reversed prior to ICH Group filing its tax returns, and that the reversals were made to account for the fact that these transactions were either repayments of capital contributions made by Mr. Iong (and therefore not reportable as income by Mr. Iong) and/or were loans to Mr. Iong which Mr. Iong subsequently repaid to the corporation when the property was sold (also not reportable as income by Mr. Iong). Mr. Iong has scheduled a meeting with the government to explain these transactions and has submitted the report of his forensic accountant detailing these transactions with the hope that the parties can reach an agreement as to the appropriate tax loss in advance of sentencing. If the parties cannot agree as to the appropriate tax loss, Mr. Iong will provide greater detail in his sentencing position paper as to why the government and Probation Department's analysis is incorrect.

### 3. The Probation Department Erroneously Added Two Levels for Sophisticated Concealment

In the PSR, the Probation Department has increased Mr. Iong's base offense level with respect to Count Three by two levels pursuant to U.S.S.G. § 2T1.1(b)(2) on the ground that Mr. Iong's tax evasion purportedly involved sophisticated concealment. (PSR ¶ 57). Because the case law and sentencing commission guidelines are clear that Mr. Iong's conduct did not involve sophisticated concealment but rather garden-variety tax fraud, the Probation Department should not have added these two levels and Mr. Iong's guideline calculation should be adjusted accordingly.

As an initial matter, according to the Federal Sentencing Commission, "sophisticated means" and/or "sophisticated concealment" refers to "especially complex or especially intricate offense conduct in which deliberate steps are taken to make the offense, or its execution, difficult to detect." U.S.S.G. § 2T1.1 comment, n.4 (1998). Typically, sophisticated means is applied where "the defendant used offshore bank accounts, or transactions through corporate shells or fictitious entities." Nothing of the sort occurred here.

In particular, the evidence presented by the government establishes that Mr. Iong simply failed to report on his tax returns certain personal expenditures paid for by his solely owned corporation (such as rental payments and

mortgage/construction payments on certain real property). There was no effort made to conceal these transactions, as the escrow paperwork and the corporate books and records could be traced in any cursory review of the relevant information.

This unobstructed paper trail was a far cry from the definition of sophisticated means, which is much more substantial than the "more than minimal planning" described under other guidelines. United States v. Bhagavan, 911 F.Supp. 351, 355 (N.D. Ind. 1995). "There is nothing sophisticated about simply not disclosing income to your accountant," United States v. Stokes, 998 F.2d 279, 282 (5th Cir. 1993), which is exactly what happened here. Although Mr. Iong should have reported these corporate benefits as personal income (akin to additional salary), the failure to do so was not "sophisticated" but the very definition of the crime itself (failing to properly report all income). Indeed, simply paying taxes involves some planning, and therefore, mere planning is not enough to trigger a sentencing enhancement. To find that a defendant has used sophisticated means to commit a tax offense requires a determination that there have been "unusually sophisticated efforts to conceal the evasion." Bhagavan, 911 F.Supp. at 354-55 (quoting United States v. Becker, 965 F.2d 383, 390 (7th Cir. 1992). Mr. Iong did not use aliases, code names, or portable bank accounts. See United States v. Hammes, 3 F.3d 1081, 1083 (7th Cir. 1993). He did not use

multiple mailing addresses and change his method of lying to the IRS to avoid detection.  United States v. Pierce, 17 F.3d 146, 151 (6th Cir. 1994).

In substance, the tax offense in this case was nothing more than failing to properly account for all personal income.  "If that scheme is sophisticated within the meaning of the guidelines, then every fraudulent tax return will fall within that enhancement's rubric." United States v. Rice, 52 F.3d 843 (10th Cir. 1995); see also United States v. Lewis, 907 F.Supp. 683, 688 (S.D.N.Y. 1995) ("In the hierarchy of tax evasion schemes, this one was relatively simple."); United States v. Kaufman, 800 F.Supp. 648, 655 (N.D. Ind. 1992) (declining to find sophisticated means where the paper trail remained and the true payments could be easily reassembled); United States v. Tin Yat Chin, 371 F.3d 31, 42 (2d Cir. 2004) (declining to find especially intricate or complex steps to evade taxes where defendant "used four fictitious identities, established two separate offices, limited his contacts with the victims, and accepted only cash payments"); United States v. Huber, 462 F.3d 945, 951 (8th Cir. 2006) (declining to apply enhancement for "sophisticated means" where the defendant did not use shell corporations, offshore accounts or "layer" transactions).

Moreover, the sole basis relied on by the Probation Department for finding that Mr. Iong used sophisticated concealment was Mr. Iong's alleged use of false commercial equipment invoices to obtain loans from banks for the benefit of ICH

Group. (PSR ¶ 57). However, as a matter of law, it is inappropriate for the Probation Department to use this alleged conduct to enhance Mr. Iong's sentence because **it is separate and distinct from the alleged tax fraud.** Specifically, Mr. Iong initially was charged with bank fraud (Counts 4-10 of the Indictment) in connection with his alleged use of false invoices to draw down on lines of credit for the corporation's working capital. Mr. Iong did not plead guilty to this offense, the banks did not suffer any loss because the loans were repaid in full, and the government has agreed to dismiss these counts at the time of sentencing. (PSR ¶ 106). Nevertheless, the Probation Department has determined that the use of fraudulent invoices in connection with the alleged bank fraud involves sophisticated concealment, thereby improperly conflating the bank fraud conduct with the tax fraud conduct for sentencing purposes.

The Court's decision in United States v. Stokes, 998 F.2d 279, 282 (5th Cir. 1993) is instructive. In Stokes, the defendant was employed as an office manager for a medical clinic and in that capacity had signature authority on the clinic's bank account. Stokes, 998 F.2d at 280. Defendant embezzled money from the clinic using sophisticated means to conceal her embezzlement through the creation of accounts in other people's names and various money transfers. Defendant also failed to report the income she embezzled from the clinic and therefore was charged with tax fraud. Id. at 280-81. The government argued and the trial court

-8-

found that defendant's tax fraud involved sophisticated concealment because the creation of bank accounts in others names and the various transfers of the money were designed to conceal the tax fraud, and therefore the court increased defendant's offense level by two levels pursuant to U.S.S.G. § 2T1.3(b)(2). Id. at 282.

The Court of Appeals reversed the trial court's finding. According to the Court of Appeals, the use of sophisticated means must "be tied to the offense of conviction." The Court noted that the defendant's alleged sophisticated concealment was tied to her scheme to embezzle money from the clinic, rather than her tax evasion charges. Id. at 282. Indeed, the Court noted that "[t]here is nothing sophisticated about simply not disclosing income to your accountant." Id. The Court concluded that the application of two level enhancement was not warranted. Id.

Here, the Court's analysis in Stokes is directly applicable and establishes that the Probation Department erred in finding sophisticated concealment based on the alleged bank fraud conduct. Specifically, all of the conduct referenced in the PSR relates to the alleged submission of fraudulent invoices to various banks to obtain working capital for the corporation. However, this conduct is not directly tied to Mr. Iong's failure to report income from the corporation on his behalf. In essence, it is irrelevant to the tax fraud **how** the corporation obtained the money

spent on Mr. Iong's behalf; all that is relevant is that the corporation spent the money and Mr. Iong did not report it. Because there was no sophisticated concealment in connection with the **tax fraud** charges (rather, as in Stokes, the tax fraud charges involved simply failing to disclose income to the accountant), the application of the sophisticated concealment enhancement was improper.

Finally, even if the Court were to consider the use of fraudulent invoices, a sophisticated means enhancement still would not be appropriate. In United States v. Lewis, 907 F.Supp. 683, 688 (S.D.N.Y. 1995), the Court held that completing a 1040 form with false information to avoid paying federal taxes was insufficient to establish sophisticated means. Although accounts were opened in fictitious names, the Court held that because it was not difficult to determine who opened or controlled the accounts, the sophisticated means enhancement was not warranted. Moreover, because there was no evidence the defendant created shell corporations to further the scheme, the enhancement was not appropriate. Id. at 688.

Similarly, here, Mr. Iong's completion of a 1040 form with false information does not equate with the use of sophisticated means. Assuming arguendo that the Court can consider the conduct relating to the false invoices in determining whether sophisticated means were used, this conduct still would not entail sophisticated means because it was not difficult to determine who opened or controlled the accounts, and there was no evidence of shell corporations. It is

undisputed that ICH Group was a legitimate company conducting legitimate operations. Therefore, using the analysis the court applied in <u>Lewis</u>, the sophisticated means enhancement is not appropriate.

B.  Factual Inaccuracies

Mr. Iong notes what he believes to be certain inaccuracies in the factual recitation of the PSR. Mr. Iong's remarks are keyed to the numbered paragraphs in the PSR as follows:

1.  ¶¶ 15-37 – Mr. Iong objects to the extent the Probation Department in these paragraphs conflates the alleged bank fraud scheme (to which Mr. Iong did not plead guilty) with the tax evasion offense. As discussed above, it is irrelevant **how** the corporation obtained the money that Mr. Iong used for certain residential property; the only relevance is that Mr. Iong did not report the income. Moreover, as discussed above, the government and the Probation Department have inflated the alleged unreported income because they have not accounted for various transactions where the corporation's accountant reversed the transactions prior to the corporation filing a tax return. Mr. Iong was not required to report the vast majority of this alleged unreported income because it constituted either repayment of capital contributions made by Mr. Iong and/or loans to Mr. Iong that were subsequently paid back by Mr. Iong when the properties were sold. Finally, to the extent the government alleges Mr. Iong failed to fully report rental income, the

government should have but did not offset the alleged tax loss as a result of depreciation that Mr. Iong was entitled to report but did not report on his income tax returns.

2. ¶¶ 42, 52-54, 56 - The government and the Probation Department have inflated the alleged unreported income because they have not accounted for various transactions where the corporation's accountant reversed the transactions prior to the corporation filing a tax return. Mr. Iong was not required to report the vast majority of this alleged unreported income because it constituted either repayment of capital contributions made by Mr. Iong and/or loans to Mr. Iong that were subsequently paid back by Mr. Iong when the properties were sold. Finally, to the extent the government alleges Mr. Iong failed to fully report rental income, the government should have but did not offset the alleged tax loss as a result of depreciation that Mr. Iong was entitled to report but did not report on his income tax returns.

3. ¶ 57 – As discussed above, the Probation Department's determination that the **tax offense** involved sophisticated concealment was erroneous.

4. ¶ 62 – As discussed above (and conceded by the Probation Department), the Probation Department should have used U.S.S.G. § 2L2.2 rather than U.S.S.G. § 2L2.1 as the applicable guideline for this offense and therefore the base offense level should be 8.

-13-

5.  ¶¶ 68-73 – Because of the errors noted above, the guideline calculation is erroneous.

6.  ¶ 102 – Because of the errors noted above, the advisory guideline range is erroneous.

DATED: April 26, 2007, Honolulu, Hawaii    JONES DAY

By: /s/ Brian D. Hershman
Brian D. Hershman
Attorney for Defendant,
Kenneth Chio Heng Iong

LAI-2867226v1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served on the following parties at their respective addresses by means of depositing the same with the U.S. mail, postage prepaid, or by hand deliver.

TO:  LESLIE E. OSBORNE, JR., ESQ.
Assistant United States Attorney
EDWARD H. KUBO, JR., ESQ.
United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard, Box 50183
Honolulu, Hawai'i 96850

ROY KAWAMOTO
Senior U. S. Probation Officer
U. S. Probation Office
United States District Court
District of Hawai'i
Room C-110
300 Ala Moana Boulevard
Honolulu, Hawai'i 96813

Dated:  Honolulu, Hawai'i, April 26, 2007

BRIAN HERSHMAN
LEIGHTON K. LEE
Attorneys for Defendant KENNETH
CHIO HENG IONG