ORIGINAL

LAW OFFICE OF LEIGHTON K. LEE
LEIGHTON K. LEE-2975
1000 Bishop Street, Suite 312
Honolulu, Hawaii 96813
Tel. No.: (808) 599-4444
Facsimile No.: (808) 531-3244
E-mail: leighton@hawaiilaw.org
        And
JONES DAY
BRIAN D. HERSHMAN, ESQ. (Pro Hac Vice)
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
E-mail: bhershman@jonesday.com

Attorneys for Defendant
KENNETH CHIO HENG IONG

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 24 2007

at 10 o'clock and 35 min. A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiffs,<br>  vs.<br><br>KENNETH CHIO HENG IONG,<br><br>                  Defendant. | CR No. 05-00117-01-HG<br><br>DEFENDANT KENNETH IONG'S SENTENCING POSITION MEMORANDUM<br><br>Date:  June 7, 2007<br>Time:  1:30 p.m.<br>Judge: Honorable Helen Gillmor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION................................................................................ 1

    A.    Personal Background ............................................................ 3

        1.    Mr. Iong's Dedication to His Family ....................... 3

        2.    Mr. Iong's Dedication to His Community ................ 6

        3.    Mr. Iong's Dedication to His Business ................... 10

    B.    Background Related To The Charged Offenses ................... 10

II.   SENTENCING FACTORS............................................................... 12

    A.    Guidelines Calculations ..................................................... 12

    B.    A Probationary Sentence Is Sufficient, But Not Greater Than Necessary, To Comply With The Factors Set Forth in 18 U.S.C...... 15

        1.    The History and Characteristics of the Defendant ................. 16

        2.    The Nature and Circumstances of the Offense ....................... 17

        3.    The Need for the Sentence Imposed ...................................... 19

III.  CONCLUSION ............................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## Statutes

18 U.S.C. § 3553(a).........................................................................................1, 3, 13, 15

U.S.S.G. § 2L2.2 ....................................................................................................... 13

U.S.S.G. § 2T4.1(F)................................................................................................... 14

U.S.S.G. § 3D1.4 ....................................................................................................... 14

U.S.S.G. § 3E1.1(a).................................................................................................... 15

## Cases

*United States v. Booker*, 543 U.S. 220 S.Ct. 738 (2005) ......................................... 15

*United States v. Stokes*, 998 F.2d 279 (5th Cir. 1993) .............................................. 14

Defendant Kenneth Chio Heng Iong ("Mr. Iong"), through his undersigned counsel, hereby respectfully submits this Sentencing Position Memorandum, with attached exhibits, for the Court's consideration in connection with his sentencing.

## I.    INTRODUCTION

Mr. Iong submits this Sentencing Position Memorandum to bring to the Court's attention a number of facts about Mr. Iong's history and characteristics which are relevant to both the advisory Guidelines calculation and to the factors set forth in 18 U.S.C. § 3553(a).  In doing so, Mr. Iong's purpose in not to minimize or deny his culpability for the offenses to which he pleaded guilty.  Such an attempt would be misguided, and in any case Mr. Iong fully recognizes and accepts responsibility for his misconduct and the lack of judgment he displayed in committing these offenses.  However, Mr. Iong believes that his family circumstances, his history of philanthropy and community service, and his dedication to his business and employees, are all appropriate factors for this Court to consider in insuring that the ultimate sentence imposed is appropriate.

As will be discussed herein, these factors include:

- Mr. Iong's role as the nucleus of an extended family that relies on him for emotional and financial support – including a two-year old son for whom Mr. Iong is the sole source of financial support;
- Mr. Iong's philanthropy and community service, including his extraordinary acts of kindness to benefit local schools, homeless

shelters and youth mentoring programs;

- The extremely low likelihood of recidivism;

- The fact that Mr. Iong has been under virtual house arrest with electronic monitoring and other restrictions for more than two years since his release on bond;

- The fact that Mr. Iong already has paid a severe price for his conduct because, as a result of the criminal indictment, he lost his franchises and was forced to sell his businesses for pennies on the dollar;

- The lack of **any** criminal conduct prior to the underlying offenses (a variant of "aberrant behavior"); and

- Mr. Iong's willingness to make the government whole by filing amended tax returns and paying all of his back taxes plus penalties and interest.[1]

As evidenced by the extraordinary outpouring of support from friends, family members, and business associates in the numerous letters submitted to the Court, Mr. Iong has dedicated his life to enriching those around him.  Whether it be (1) acting as a surrogate father to his sister's children when their father abandoned them; (2) providing funds and resources to ensure that local school children could participate in field trips, after-school activities or extracurricular projects; (3) helping disadvantaged people living in homeless shelters find jobs; or

---

[1] The Internal Revenue Service Criminal Investigation Division has placed a "freeze" code on Mr. Iong's account which prevents Mr. Iong from filing amended returns or paying his back taxes without IRS approval.  Mr. Iong has been working with the IRS to have the freeze code lifted so that he can pay the taxes he owes plus penalties and interest.

(4) mentoring his own employees to pursue their dreams, Mr. Iong has throughout his life enabled others to have a second chance. Unfortunately, because of serious lapses of judgment that led to the criminal convictions in this case, it is Mr. Iong who now needs a second chance from this Court. In light of the factors mentioned above and taking into consideration the mandate of 18 U.S.C. § 3553(a) that the Court impose a sentence that is no greater than necessary to accomplish the objectives of that section, Mr. Iong submits that a probationary sentence with home confinement, community service, and such additional terms and conditions as the Court deems appropriate, is an appropriate sentence. The reasons for this conclusion are discussed in detail below.

**A.    Personal Background**

1.    <u>Mr. Iong's Dedication to His Family</u>

Mr. Iong was born in Macau, China, the youngest of six children. When he was only 15 years old, Mr. Iong moved to the United States to live with his older sister and attend high school in Hawaii. Although he came to the United States speaking almost no English, he graduated high school in 1981 and went on to earn a bachelor's degree from the University of Hawaii at Manoa in only two years. After graduating from college, Mr. Iong earned a Master's degree in Business Administration from the University of Hawaii at Mano.

Even though Mr. Iong is the youngest child, he has assumed a central role in his extended family, providing jobs and opportunities for his sisters and their families in the United States. Significantly, Mr. Iong has been a surrogate father to his sister's children, instilling in them the importance of education and community service. Mr. Iong's contributions to his family cannot be measured, but the successes they have achieved because of his guidance and encouragement can be – and they are impressive.

To begin, Denise Fan, Mr. Iong's eldest sister, describes how Mr. Iong was "like a father" to her three children when her husband abandoned the family due to his mental health disability. (Ex. D) Denise's youngest child, Edward, is only 18 years old, but already is a sophomore at Tufts University majoring in Chemical Engineering. Edward describes how Mr. Iong helped shape him into the successful man that he has become, and has "treated me no less than a son." (Ex. E) Edward explains that Mr. Iong is a "church-going man and a philanthropist," and notes that when he was younger he did not understand why Mr. Iong would donate his money and services to various charities even at a loss to his own business. Having matured into an accomplished young man, Edward explains that he has learned from his Uncle the importance of philanthropy and now understands why Mr. Iong gave so freely to others. (Id.)

Mr. Iong's other nephew, Howard, is 21 years old and one year away from obtaining his Masters in Business Administration in Oregon. Howard describes Mr. Iong as a "kind and caring person" and "a wonderful role model." (Ex. F) Mr. Iong's niece, Sandra, explains that when their father was unable to provide for the family, Mr. Iong gave their mom a job and a place to live and "was always there to help financially or emotionally whenever we needed it." (Ex. G) Sandra credits Mr. Iong for where she is today, a fourth year doctoral student working on her Ph.D. in Computer Science and Engineering at the University of Washington in Seattle. (Id.)

Most importantly, everyone who knows Mr. Iong describes him as a caring and committed father to his two-year old son, Wynn. Wynn's mother, Jinny Mekasul, says that she and Mr. Iong have a wonderful relationship, that Mr. Iong is "a caring, nurturing father" who has "always been there for me emotionally and spiritually." (Ex. C) Ms. Mekasul asks, "as a concerned mother," that the Court give Mr. Iong a second chance and not remove him from their loving home. Sandra Fan states that her uncle is "one of the most caring and loving fathers I've ever met." (Ex. G) Jason Lum, who worked for Mr. Iong, describes him as an "extremely dedicated family man." (Ex. H) Rita Chung, Lynnette Shimabukuro and Stephen Abdalla, business associates of Mr. Iong, similarly describe Mr. Iong as a dedicated and loving father. (Exs. I, J and K) David Chen, who volunteers

with Mr. Iong as an interpreter for the Coast Guard and in visiting hospice patients, notes that Mr. Iong is a "committed family man" and "a wonderful father" to his son. (Ex. L) Having dedicated his life to being a surrogate father and mentor for his sister's children, Mr. Iong asks for compassion and a second chance from this Court so that he can fulfill the same critical role for his two-year old son.

### 2.    Mr. Iong's Dedication to His Community

Not only has Mr. Iong displayed dedication to his extended family, he has shown this same dedication and commitment to his community, his church, his employees and his business associates. The most telling testament to Mr. Iong's character is evidenced by his charitable work in his personal capacity and as the owner of Sushi Chef. Beatrice Zane, who was the Principal at Maemae Elementary School from 1995-2003, notes that Mr. Iong is a man "who cares about the school and the community." (Ex. M) Mr. Iong's financial support to the school enabled the school to provide tutorial and homework help to the students, as well as summer programs to enrich the student's experiences. (Id.)

Two examples illustrate this point. In 1999, the students at Maemae Elementary school were planning a field trip to the mainland and had raised money to fund the trip. Unfortunately, the fundraising efforts came up $500 short, and the school was at risk of canceling the trip. At the last minute and without notice, Ms. Zane approached Mr. Iong and explained her dilemma, and Mr. Iong

immediately wrote a check for $500 – no questions asked – so that the children could participate in the field trip. In 1996, some criminals broke into the Princess Kaiulani Elementary school and stole all of the computers the children had been using for their classroom projects. Mr. Iong immediately donated two computers from his Sushi Chef operations so the school could continue functioning as normal.

Similarly, as the owner of Sushi Chef and Bakery Chef, Mr. Iong frequently had left over food at the end of the business day. Although it would have been cheaper and easier to simply throw out the food, Mr. Iong made arrangements for the food to be delivered to various homeless shelters in the community. In addition, Mr. Iong personally delivered donuts to various police stations in Hawaii at no cost to the police officers. These and other selfless acts of kindness by Mr. Iong explain why so many individuals came forward to write letters on his behalf attesting to his integrity.

Mr. Iong has also shown great leadership and philanthropy through his church, the Grace Bible Church. The Senior Pastor in the church, Norman Nakanishi, notes that Mr. Iong has "assisted us in our outreach to community youth and to the homeless." (Ex. N) Mr. Nakanishi states that Mr. Iong's "heart is big," and "[t]he community needs more like him." (Id.) The church's Youth Pastor, Juan Balila, Jr., tells how Mr. Iong "lives his life loving God and serving others." (Ex. O) Mr. Balila describes how Mr. Iong approached him to assist in efforts to

reach the youth, and that Mr. Iong quickly made a positive impact on the youth he was mentoring. (Id.) Other members of the church describe how Mr. Iong worked with the Next Step Homeless Shelter in Kakaako. Not only did Mr. Iong help at the shelter, he took it upon himself to use his business contacts to find jobs for two homeless gentlemen, according to Mal Pinlac, the owner and CEO of a design company. (Ex. P) As Dave Asato, president of City Construction, Inc., describes it, Mr. Iong not only talks the talk, he "walks the walk." (Ex. Q) Dennis Nakamoto, the owner of an architectural and project management firm in Hawaii, points out that Mr. Iong "offers assistance before being asked," and his "compassion overflows" when discussing those in the community who are less fortunate and challenged. (Ex. R) Norman Katayama describes how Mr. Iong has been a great supporter of the church's youth outreach program, and from his own money has donated bibles for the children to use. (Id.) Mr. Iong also assists the Coast Guard with translations and joins with members of the Taiwan Buddhist Tzu Chi Foundation in performing hospice visits, according to David Chen. (Ex. L) Mr. Chen says that "Ken is the type of person who would 'give his shirt to help someone in need.'" (Id.) Finally, Gerald Schoch, who is a Master Sales Consultant with Jaguar Honolulu, tells the Court that he has known Mr. Iong since he was a teenager and has always found him to be "generous and honest; someone to be counted on in our community." Mr. Schoch says he "hopes the Court can see

the value in *not* sentencing Kenneth Iong to jail, instead keeping him here to continue doing good works in our community. (Ex. S)

Mr. Iong showed this same integrity and compassion in dealing with employees and business associates. Angel Mabini worked for Mr. Iong as a driver for the Sushi Chef operations. According to Mr. Mabini, he was unfocused and misguided until Mr. Iong took him under his wing, and as a business mentor and friend, gave him a "second chance in life to pursue [his] hopes and dreams." (Ex. T) Mr. Mabini, who is currently a licensed Physical Therapist, states that "[w]ithout [Mr. Iong's] guidance, I and others he has helped might have been another statistical failure in society." (Id.)

Mr. Iong also never forgot his immigrant roots, frequently providing employment and an opportunity to those coming to America who spoke little or no English, as noted by Kim Robello, the Marketing Manager at Minit Stop Stores. (Ex. U) Rick Miller, who was a manager for one of Mr. Iong's retail operations, was impressed with Mr. Iong's ethics and his treatment of his employees. (Ex. V) Jason Lum, who worked for Mr. Iong and succeeded because of "Ken's help and guidance," asks the Court to give Mr. Iong a second chance because Mr. Iong has given so many others a second chance in life. (Ex. H)

3.    Mr. Iong's Dedication to His Business

In 1988, Mr. Iong opened Sushi Chef as a sushi take-out establishment

operating out of a small storefront in Waikiki.  As noted by the Hawaii State

Senate who recognized Mr. Iong on April 5, 2001 for his "Outstanding and

Innovative Business Achievements in Hawaii," between 1988 and 2001, Mr. Iong

developed Sushi Chef into Hawaii's largest food manufacturer, distributor and

wholesaler, distributing over 300 different products daily on Oahu and the

neighbor island.  (Ex. W)  Mr. Iong and Sushi Chef employed over 125 residents

of Hawaii at its state of the art plant and warehouse, and was a vital contributor to

the Hawaiian economy.[2]  (Id.)

In 2000, Mr. Iong opened and operated Bakery Chef, a hi-tech automated

bakery specializing in high quality Japanese and Artisan breads, pastries, specialty

donuts and other local favorites.  Mr. Iong also owned and operated several

restaurants, including Catch of the Day sushi restaurants, and a chain of Dunkin

Donut and Baskin Robin ice cream franchises in Hawaii.  (Id.)

**B.    Background Related To The Charged Offenses**

It was in many ways Mr. Iong's dedication to his business, and his

commitment to his family, that led to the serious lapse in judgment that brought

---

[2] Because the letters submitted on Mr. Iong's behalf were too numerous to include
references to each and every one, Mr. Iong has attached the letters not specifically referenced as
Ex. X, collectively.

Mr. Iong before this Court for sentencing. In particular, Mr. Iong stretched himself too thin out of a desire to grow the business and employ his family and friends, leading to financial difficulties. In 1998, Mr. Iong consolidated his various food operations and facilities into a state-of-the-art 12,000 square foot facility at Iwilei Center in Honolulu, with an additional 5,000 square foot warehouse. The expansion took a toll on Mr. Iong mentally and financially, as his need for working capital to fund the operations outpaced his revenue stream, and he made decisions that have led to the present charges.

At around the same time, Mr. Iong decided to pursue one of his life-long passions, real estate investment. Mr. Iong borrowed money from his Sushi Chef operations to make the down payments, pay the mortgages and fund construction on his real estate investments, and failed to account for certain of this income on his individual income tax returns. Although Mr. Iong paid back the vast majority of these borrowed funds after the properties sold, Mr. Iong admittedly failed to report more than $100,000 in income he received, resulting in a tax loss to the government in excess of $20,000 – money which Mr. Iong is ready, willing and able to pay back with penalties and interest.

In 2002, Mr. Iong was traveling internationally in connection with his business and a business acquaintance presented Mr. Iong with the opportunity to

acquire a false Costa Rican passport. Mr. Iong displayed a complete lack of judgment and purchased the passport for $9000.

Mr. Iong deeply regrets his actions and asks that the Court view this aberrant conduct in the context of Mr. Iong's substantial contributions to his family, his church and his community.

On February 23, 2007, Mr. Iong pled guilty, pursuant to a written plea agreement, to Counts 3 and 11 of the Indictment, charging Mr. Iong with income tax evasion and passport fraud, respectively. As discussed above, the conduct which resulted in Mr. Iong's guilty plea was an aberration for Mr. Iong, who has worked hard his whole life to earn the respect and affection of his family, his friends, and his business colleagues. Mr. Iong, and those who know him, pray that this Court will give him a second chance so that he can continue serving his family and his community.

## II.    SENTENCING FACTORS

### A.    Guidelines Calculations

Mr. Iong previously filed Objections to the draft Pre-Sentence Report ("PSR") prepared by the Probation Department and has not yet received the final PSR. As a result, Mr. Iong does not know if the Probation Department agrees or disagrees with Mr. Iong's objections, and Mr. Iong reserves the right to file a supplemental Sentencing Position Memorandum after he receives the final PSR.

As discussed below, Mr. Iong believes that the total offense level for the offenses of conviction is 11, resulting in a sentencing range of 8-14 months. For the reasons discussed in Section II.B, below, Mr. Iong believes that a sentence of home confinement with community service is sufficient, but not greater than necessary, to accomplish the objectives of 18 U.S.C. § 3553(a). In the alternative, Mr. Iong would request a low-end split sentence of 4 months custody and the remainder on home confinement.

With respect to Count 11 charging use of a fraudulent passport, Mr. Iong believes that all parties now agree that the applicable sentencing guideline is U.S.S.G. § 2L2.2. Section 2L2.2 provides for a base and adjusted offense level of 8.

With respect to Counts Three, Four and Five of the Indictment charging tax evasion for the period 1997-1999, Mr. Iong has provided the government and the Probation Department with (1) the report of Steven Hawkins, a certified public accountant, certified fraud examiner, and certified forensic accountant, explaining that many of the transactions alleged by the government should not have been characterized as unreported income because the transactions were reversed prior to ICH Group filing its tax returns; and (2) a spreadsheet prepared by Mr. Hawkins analyzing the actual amount of unreported income. (Ex. A). Based on Mr.

Hawkin's analysis, the total tax loss for sentencing purposes is $20,845 based on unreported income in the amount of $104,978.

Pursuant to U.S.S.G. § 2T4.1(F), a tax loss of more than $13,500 but less than $23,500 results in a base offense level of 11. As discussed in Mr. Iong's Objections to the draft PSR, the two-level enhancement for sophisticated concealment is not warranted because (1) Mr. Iong's failure to report certain personal expenditures made on his behalf by his solely owned corporation was the kind of "garden-variety" tax fraud that Courts have found does not warrant the two-level enhancement; and (2) any alleged concealment (i.e. the use of false invoices to draw down on a business line of credit) was separate and distinct from the tax charges in the Indictment and therefore was not a proper basis for applying the enhancement. *United States v. Stokes*, 998 F.2d 279, 282 (5th Cir. 1993) (Court erred in applying two-level enhancement where defendant's conduct was designed to conceal embezzlement, not tax fraud, and therefore concealment was not directly tied to the offense of conviction; Court found that "[t]here is nothing sophisticated about simply not disclosing income to your accountant."). Therefore, the base and adjusted offense level for Counts Three, Four and Five of the Indictment is 11.

After applying the multiple count adjustment pursuant to U.S.S.G. § 3D1.4, the combined adjusted offense level for all of the counts of conviction is 13. Mr.

Iong then would be entitled to a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), resulting in a total offense level of 11, and a guideline range of 8-14 months.

**B.    A Probationary Sentence Is Sufficient, But Not Greater Than Necessary, To Comply With The Factors Set Forth in 18 U.S.C. § 3553(a)**

In accordance *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), the guideline analysis discussed above is a relevant consideration by the Court in determining the appropriate sentence for Mr. Iong, but only as an advisory tool. In addition, *Booker* and 18 U.S.C. § 3553(a) require that a sentencing court "impose a sentence sufficient, but not greater than necessary" to address the various sentencing considerations set forth in Section 3553(a), including the history and characteristics of the defendant, the nature and circumstances of the offense, and the need for the sentence imposed in light of considerations of deterrence, public protection and retribution. In light of the factors set forth in Section 3553(a), and for the reasons set forth in this memorandum, it is respectfully submitted that this Court can and should impose a sentence that allows Mr. Iong to continue to care for his two-year old child and his extended family, and to serve his church and his community, and does not require that Mr. Iong be incarcerated for his offenses.

1.    The History and Characteristics of the Defendant

The history and characteristics of Mr. Iong strongly support a probationary

sentence, and at a minimum support a sentence below the applicable guideline

range.  There can be little dispute that, but for the events giving rise to Mr. Iong's

conviction, Mr. Iong has led an exemplary life.  After coming to the United States

as a teenager speaking almost no English, Mr. Iong embodied the immigrant

success story.  Without the benefit of parental guidance (his parents remained in

China and his only real family in the United States was his older sister), Mr. Iong

graduated high school and within two years completed his college curriculum.

Recognizing the importance of education, Mr. Iong went on to obtain his Master's

in Business Administration, and then opened a small, family-owned sushi

restaurant in 1988.  With hard work and dedication, Mr. Iong turned his 300 square

foot restaurant into a 12,000 square foot plant and warehouse that manufacture and

distribute a variety of food products to supermarkets, chain stores, convenience

stores, hotels, and airports throughout Hawaii.  In the process, Mr. Iong became a

significant contributor to the Hawaiian economy and an employer to many

Hawaiian citizens.

As impressive as they are, however, Mr. Iong's business accomplishments

pale in comparison to the work he has performed on behalf of his family, friends

and others in the community.  The fact that so many of Mr. Iong's employees,

-16-

friends and business associates took the time to write the Court speaks volumes about the "history and characteristics" of Mr. Iong. As discussed in detail above, these individuals from all facets of Mr. Iong's life uniformly attest to Mr. Iong's integrity and honesty, personal characteristics that this Court can and should take into account in meting out a just sentence for Mr. Iong.

Of greatest significance, however, is Mr. Iong's relationship with his two-year old son Wynn. Mr. Iong had the good fortune of being a surrogate father to his sister's children, and, as they discuss in their letters to the Court, Mr. Iong's influence and mentoring were critical to the success of his niece and nephews. Mr. Iong prays that this Court allows him the opportunity to play the same positive role in the life of his son, a feat that would be substantially more difficult if Mr. Iong were removed from his home and incarcerated for any period of time.

## 2.   The Nature and Circumstances of the Offense

The nature and circumstances of Mr. Iong's offenses also support a probationary sentence or, at a minimum, a sentence below the applicable guideline level. In essence, the tax charges involve Mr. Iong's failure to report as income on his tax returns certain personal expenditures paid for by his solely owned corporation (such as rental payments and mortgage/construction payments on certain investment property). In addition, Mr. Iong purchased a false passport to travel overseas.

While the charges are serious and Mr. Iong does not intend to minimize the significant lack of judgment he has displayed, the nature of these offenses do not mandate a custodial sentence. With respect to the tax violations, Mr. Iong failed to pay approximately $20,000 in taxes due and owing from the period 1997-1999.[3] Mr. Iong, with the assistance of his personal accountant and a forensic accountant, has prepared amended tax returns and is willing and able to pay back what he owes, plus penalties and interest. Thus, there has been no loss to the government resulting from Mr. Iong's failure to properly report his income.

With respect to the passport violation, Mr. Iong was confronted by law enforcement on the first trip on which Mr. Iong attempted to use the passport, and Mr. Iong immediately admitted his true identity. Although Mr. Iong acknowledges that his purchase and use of the passport was a serious lapse in judgment, it is significant that his passport was confiscated and resulted in no demonstrable harm. Under the circumstances, Mr. Iong submits that his aberrational conduct and the nature of the offense do not warrant a custodial sentence, especially when the Court considers Mr. Iong's substantial contributions to his family and the

---

[3] Even if the purported tax loss is approximately $200,000 as the government alleges, the analysis does not change. As discussed in the forensic accounting expert's report, because ICH Group did not deduct as expenses the payments made on behalf of Mr. Iong, the net effect of Mr. Iong's failure to report this income is a wash. Moreover, because these payments are properly characterized as loans (which were fully paid back) or non-taxable distributions of capital, the government has not actually suffered a tax loss. In any event, even a $200,000 tax loss is not so great as to warrant a custodial sentence under the circumstances.

community, and his charitable acts on behalf of his church, the homeless, and the local schools.

### 3.    The Need for the Sentence Imposed

Under Section 3553(a), the Court is also required to consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law and to afford adequate deterrence, among other things. For several reasons, Mr. Iong submits that a custodial sentence is not needed.

As an initial matter, there can be no dispute that Mr. Iong already has paid dearly for his mistakes and a custodial sentence is not needed to provide just punishment for the offense. At the time Mr. Iong was charged with these offenses, the businesses that he dedicated his life to expanding and making successful were valued in excess of $20 million. As a result of the indictment, Mr. Iong's Dunkin Donut franchise agreements and Baskin Robins franchise agreements were terminated, and he was forced to sell his Sushi Chef and Bakery Chef operations for pennies on the dollar. Moreover, the individuals to whom Mr. Iong sold these operations seized on the opportunity to take advantage of Mr. Iong's dire straits, and have effectively refused to pay him any of the money due under the sales agreements. In sum, Mr. Iong has been financially devastated as a result of these offenses.

Second, a custodial sentence is not necessary to protect the public from Mr. Iong or to afford adequate deterrence. Mr. Iong is 43 years old and prior to these events he had no prior arrests, let alone any prior convictions. As the letters from his family, friends, and associates make clear, Mr. Iong plainly has learned his lesson and has rededicated his life to his family, his community and his church. Mr. Iong's own letter to this Court confirms that he understands the gravity of his errors, and that he is committed to pursuing a just and righteous path. (Ex. B). Under the circumstances, the risk of recidivism is miniscule, and any purported benefit to be gained by incarcerating Mr. Iong clearly would be outweighed by the substantial harm that would be caused by removing Mr. Iong from his family, his friends and his community.

Finally, although Mr. Iong acknowledges that his tax and passport violations are serious, requiring that Mr. Iong be placed on home confinement and perform community service, with such additional terms and conditions as the Court deems appropriate, is sufficient, but not greater than necessary, to reflect the seriousness of the offense and promote respect for the law. Where, as here, the tax loss was approximately $20,000 and Mr. Iong is prepared to make the government whole, and no one was harmed by the passport violation, the balancing of the Section 3553(a) factors more than supports a probationary sentence by this Court.

## III.   **CONCLUSION**

Mr. Iong has learned his lesson.  He has accepted responsibility for his misconduct and has paid dearly for his mistakes.  In view of his exemplary history of community service, his noteworthy support for his immediate family, and his need to care for and be a positive role model for his toddler son, Mr. Iong respectfully asks for a sentence of probation with a condition of home confinement, community service, and such additional terms and conditions as the Court deems appropriate.  If the Court is inclined to impose a custodial sentence, Mr. Iong requests that the sentence be as short as possible so that he may continue to care for his family and his community.  Mr. Iong thanks the Court for its patience and its attention to this matter.

DATED: May 22, 2007,
           Los Angeles, California

JONES DAY

By: _Brian D. Hershman_
       Brian D. Hershman
       Attorney for Defendant,
       Kenneth Chio Heng Iong

LAI-2872236v1